**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 22-CR-10061-WGY** |
| | ) | |
| **JULIEN TOULOTTE,** | ) | |
| **Defendant.** | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Using the internet, then-22 year old Julien Toulotte ("defendant") distributed and possessed child sexual abuse material ("CSAM"), or child pornographic, images and videos. His child pornography collection consisted of hundreds of CSAM videos and hundreds of CSAM images, some as young as toddlers. Distributing and possessing child pornography is not a victimless crime. Real children have been victimized because of the defendant's criminal actions. Further, the defendant is a repeat offender having previously been adjudicated as a juvenile for similar criminal conduct. The facts of this case are serious and call out for a significant sentence.

The parties have entered into a plea agreement entered into pursuant to Fed. R. Crim. P. 11(c)(1)(C). In it, the parties jointly recommend a period of 104 months incarceration; a mandatory minimum period of 5 years of supervised release; a mandatory special assessment of $200; an additional special assessment of $5,000 pursuant to 18 U.S.C. § 3014(a)(3) (the "JVTA assessment" for each count unless the Court determines the defendant is indigent; a special assessment of up to $35,000 for Count One and up to $17,000 for Count Two, pursuant to 18 U.S.C. § 2259A (the "AVAA assessment"), unless the Court determines the defendant is

indigent; restitution to be determined at or following the date of sentencing;[1] forfeiture as set forth in paragraph 7 of the plea agreement; and a fine within the Guidelines range as calculated by the parties in the plea agreement, excluding departures, unless the Court finds that defendant is not able, and is not likely to become able, to pay a fine.  ECF No. 40. Further, pursuant to the Sex Offender Registration and Notification Act and the laws of the Commonwealth of Massachusetts, the defendant is required to register as a sex offender following his incarceration and to keep that registration current.  The government argues such a sentence is fair, reasonable, appropriate and warranted in this case and comports with the factors outlined in 18 U.S.C. § 3553(a).

## I.      SENTENCING GUIDELINES/GUIDELINE CALCULATIONS

### A.      Legal Framework

The advisory United States Sentencing Guidelines ("Guidelines" or "USSG") are "the starting point and the initial benchmark" in sentencing.  *Gall v. United States,* 552 U.S. 38, 49-50 (2007).  The Guidelines must be properly calculated and considered, but ultimately the Court must craft a sentence that sufficiently accounts for the sentencing factors and objectives outlined in 18 U.S.C. § 3553(a).  *Id.* at 49-50.  Because each case is unique, the Court must make a

---

[1] Pursuant to 18 U.S.C. § 3663A, restitution is mandatory in this case.  After the date of the rule 11 hearing, the government received and provided defense counsel and U.S. Probation with documentation relative to restitution requests submitted on behalf of the following 7 identified minor series victims who are victims in this case:  "Angela," "AprilBlonde," "Cindy," "Jenny," "SweetWhiteSugar (Pia)," "Tara," and "Vicky (Lily).  To date, the parties have agreed to the following restitution: restitution in the amount of $3,000 to the series minor victim identified as "Angela," restitution in the amount of $3,000 to series victim identified as "Tara," restitution in the amount of $3,500 to series minor victim identified as "April."  The government is awaiting a response from defense as to final figures for the restitution for the other identified victims. Should the parties not have final restitution figures by the sentencing date, the government would request a further date for a restitution hearing within 90 days of the sentencing date.  *See* 18 U.S.C. § 3664(d)(5).

particularized analysis of the nature and circumstances of the offense and the defendant's history and characteristics. *See* 18 U.S.C. § 3553(a)(1). The Court must then impose a sentence that sufficiently reflects the seriousness of the crime, promotes respect for the law, and provides just punishment, and the sentence should adequately deter criminal conduct, protect the public, and provide any necessary education, training or treatment. *See* 18 U.S.C. §§ 3553(a)(2)(A)-(D). The Court must also strive to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(6). After determining the appropriate sentence, the Court should adequately explain its rationale to "allow for meaningful appellate review and to promote the perception of fair sentencing." *See Gall*, 552 U.S. at 50.

**B.      Procedural History/U.S.S.G. Calculations**

On March 17, 2022, a two-count indictment charging Julien Toulotte ("defendant" or "Toulotte"), with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1), and Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2), was returned. On November 17, 2022, the defendant pled guilty to both counts of the indictment. The defendant faces a statutory maximum sentence of twenty years on his conviction for Distribution of Child Pornography with a 5 year mandatory minimum sentence. He faces a statutory maximum of 20 years on the Possession of Child Pornography conviction. Additionally, the sentencing guidelines and statutory term of supervised release require a term of 5 years up to life on each count. *See* cover sheet of PSR, PSR ¶ 86, and 18 U.S.C. § 3583(k).

A supplemental final Presentence Report ("PSR") was issued by U.S. Probation on March 6, 2023. The PSR determined the adjusted offense level to be 37, after including all relevant sentencing enhancements and grouping principles. *See* PSR ¶¶ 29-41. With a three-level reduction for acceptance of responsibility, the total offense level ("TOL") is 34. *See* PSR

¶¶ 43-45.  Based upon a TOL of 34and a criminal history category ("CHC") of I, the advisory guidelines sentencing range ("GSR") is 151-188 months.  *See* PSR ¶¶ 49, 84.  The guideline calculations outlined in the PSR which are consistent with the calculations outlined by the parties in the plea agreement.  The parties recommend a sentence of 104 months which is below the low-end of the advisory guidelines sentencing range.  Although below, it is a significant sentence for this 24 year old defendant and is warranted.

## II.    DISCUSSION OF 18 U.S.C. § 3553 FACTORS

The government asserts the joint recommendation by the parties accounts for the factors that the Court must consider outlined in 18 U.S.C. § 3553(a).  The factors include, but are not limited to, the nature and circumstances of the offenses, the history and characteristics of the defendant, the seriousness of the offenses, promoting respect for the law, providing just punishment for the offense, the need to deter the defendant and others, the need to protect the public from the defendant's crimes, and the need to avoid unwarranted sentencing disparities**.**

### A.    The Nature and Circumstances of the Offenses

The government urges the Court to consider the nature and circumstances of the offenses, to recognize the seriousness of his crimes, to assess the crimes for what they are, and for the negative impact they have the child victims.  *See* 18 U.S.C. § 3553(a)(1). The facts were outlined at the Rule 11 and are outlined in detail in the PSR and the government outlines the facts herein.  *See* PSR ¶¶ 8-24.

On or about January 14, 2021, an adult female ("EE") reported to IPD that she had received CSAM from the defendant, with whom she had been communicating with online via Snapchat.  EE provided police with the defendant's Snapchat and Instagram usernames and profiles.  Per EE, during their online chats, the defendant told EE he had oral sex with a 9 year

old female child.[2]  EE reported that the defendant then sent EE a CSAM photo via Snapchat, which per EE, depicted a young girl with her mouth open and filled with what EE believed to be semen.

After interviewing EE, an Ipswich Police Department ("IPD") detective, posing undercover ("u/c") as a 15 year old female, began communicating online with the defendant over his multiple Snapchat accounts.  Throughout their online conversations, the defendant confirmed he was 22 years old and the u/c informed him that she was 15 year old female.  From January 14, 2021, through February 6, 2021, the u/c communicated online with the defendant via his various Snapchat Accounts.  During the on-line conversations, the defendant stated "Like if anyone found out it may be kinda bad for me" and when the u/c asked why, the defendant responded "Cause ur 15."

On February 4, 2021, using the internet, the defendant sent the u/c, posing as a 15 year old female, four photos of an adult, nude male. Three of the photos include a man's erect or semi-erect penis and the defendant's face is observed in two of the photos.  The defendant also asked u/c to send him photos (of the u/c), which the u/c did not do.  Believing the u/c was 15 years old, the defendant suggested they meet up in person and proposed the date of February 7, 2021, for the meeting.  However, as of February 6, 2021, the defendant was no longer listed on u/c's Snapchat friend list and no further conversation occurred between the defendant and the u/c in that u/c capacity.

On or about January 27th and January 28th, 2021, EE returned to the IPD to report that the defendant again requested to friend her on Snapchat.  EE did not comply with that request.  On

---

[2] Per the FBI, that photo has not been recovered.

January 29, 2021, with EE's permission, the IPD u/c assumed EE's on-line identity and communicated via Snapchat with the defendant. From January 29, 2021, to February 4, 2021, the u/c, posing as EE, communicated online with the defendant. On or about January 29, 2021, via Snapchat, the defendant asked the u/c if she wanted to join him when he babysits an 11 year old girl and explained that he wanted to engage in sexual intercourse with the 11 year old. The u/c, as EE, questioned the defendant about the CSAM photo he had sent previously to EE herself (i.e., which is the photo that EE previously described as depicting a young girl with what appears to be semen in her mouth) and the defendant told the u/c it was real. Several days later, while chatting online with the u/c, who was posing as EE, the defendant asked the u/c if she wanted to have sex with him when he comes to Ipswich on February 6, 2021 and if the u/c wanted to watch child pornography with him.

On February 5, 2021, the defendant sent the u/c detective, posing as EE, two CSAM videos over the internet. One CSAM video depicted a prepubescent female child performing oral sex on an adult male's erect penis. The video is further described as follows:

> The video depicts a minor child appears to be a prepubescent female based on her stature, undeveloped breasts and the size of her hands. The child is kneeling on the floor between the legs of the adult male and the male's penis and groin area are visible. He appears to be in the seated position. The child appears to be Caucasian with light brown or blonde hair. The child is performing oral sex on the adult male by inserting the penis into her mouth and stops at one point because she gagged. The video is approximately 20 seconds in length.

The second CSAM video that the defendant distributed to the u/c officer, who was posing as EE, depicted a nude, adult male having vaginal intercourse with a prepubescent female child. The video is further described as follows:

> The video depicts a man using his erect penis to have vaginal intercourse with what looks to be a young, prepubescent female child on her forearms and knees on a mattress. The child appears to be Caucasian with dark brown or black shoulder length hair and wearing only an orange t-shirt and no pants. A nude adult male, who appears to have a large

stomach, is penetrating the child vaginally from behind with his erect penis. The male removes his penis from her vagina and the video pans down to show the child's vaginal area closely. The child puts her hands underneath her vaginal area in an attempt to catch a white liquid as it seeped from her vagina. The man uses his hand to push the child's hand down and away from her vagina in what appears to be an effort to move her hand out of the way of the camera. The child's vaginal area has no visible pubic hair and her hands appear to be very small compared to the adult male's hands.

Relative to this second CSAM video, during their on-line communications, the defendant told the u/c that the child in the video was "[p]robably like 8." When the u/c questioned the defendant about where he finds the videos, he told the u/c that he finds them online.

On March 12, 2021, state search warrants were executed for the defendant's two residences: a residence in Ipswich and a residence in Boston. The defendant was in his bed in his bedroom at the Ipswich residence when the search warrant was executed and he had an iPhone 12 cell phone in his bed at the time and the Snapchat application was found on the device by authorities. Many other electronic devices were seized from the two residences pursuant to the search warrants. CSAM images and videos were found on the defendant's unlocked cell phone.[3]

In November 2021, two federal search warrants were obtained to search the defendant's three Snapchat Accounts as well as for several of the numerous devices that were previously lawfully seized pursuant to the two state search warrants, including defendant's cell phone and a Sandisk 32G removable drive. On a later date, the FBI conducted a further forensic review of the Sandisk 32GB removable drive seized from the defendant's Ipswich bedroom that he himself was located at the time of the search warrant execution and recovered approximately 385 videos of child pornography and an additional approximately 320 image files depicting child pornography.

---

[3] Thereafter, the phone became locked and, to date, the FBI has been unable to access it.

Some of the image files contained collages of multiple CSAM photos; if those images were each counted individually, per the FBI, there would be approximately 520 CSAM image files. Of the total amount of CSAM videos and CSAM image files, per the FBI, there appears to be approximately 20 videos and approximately 10 images of CSAM depicting infants and toddlers (approximately 3 years of age or younger). There does not appear to be any CSAM images or CSAM videos depicting sadomasochism. The CSAM images and CSAM videos included prepubescent minors or minors less than 12 years old, including the sexual abuse or exploitation of an infant or toddler. Three of the CSAM videos are described as follows:

     a.  A video that is approximately 3 minutes and 19 seconds in length, depicting an adult male wearing a long sleeve black shirt and no pants and attempting to insert his erect penis into the anus and vagina area of an infant female child, who appears to be approximately three to four months old. The adult male and the infant appear to be Caucasian. The infant is laying on her back on what appears to be a blue bedsheet and yellow blanket with a pacifier in her hand. The adult male uses his left hand to grasp the infant's right leg and elevates the infant's bottom while the adult male uses his right hand to rub his erect penis in a circulation motion against the vagina area of the infant. The infant puts the pacifier in her mouth and removes it. The man then reaches up and removes the pacifier from the infant's hand and discards it. He subsequently inserts his erect penis into the infant's mouth. The video also depicts the adult male using is left hand to spread apart the vagina and anus area of the infant as he films close in on the infant's genitals. The adult male subsequently rubs the infant's vagina using his index finger and thumb of his right hand and his penis.

     b.  A video that is approximately 4 minutes and 30 seconds in length, depicting an adult male wearing a yellow shirt and no pants, pouring lotion into his right hand, rubbing his hands together and then rubbing the lotion on the body of a small female child that appears to be approximately two to four years of age. After he rubs the child with lotion, the adult male attempts to insert his erect penis and fingers into the anus and vagina area of a female child. The child appears to have a red rash on her vagina area and is laying on her back fully nude. After rubbing his penis on the child, the male ejaculates on the child's vagina and then uses a green and yellow towel to wipe the semen from her vagina. The adult male then continues to rub the child's vagina with his digits.

     c.  A video that is approximately 59 seconds in length, depicting an adult male using his erect penis to have vaginal intercourse with what looks to be a young, prepubescent female child on her forearms and knees on a mattress. The child appears to be Caucasian with dark brown or black shoulder length hair and wearing only an orange t-shirt and no pants. A nude, adult male, who appears to have a large stomach, is penetrating the child vaginally from behind with his erect penis. The male removes

his penis from her vagina and the video pans down to show the child's vaginal area closely. The child puts her hands underneath her vaginal area in an attempt to catch a white liquid as it seeped from her vagina. The man uses his hand to push the child's hand down and away from her vagina in what appears to be an effort to move her hand out of the way of the camera. The child's vaginal area has no visible pubic hair and her hands appear to be very small compared to the adult male's hands. This video is the same or substantially similar video sent from the Suspect Snapchat Account 2 to the UC posing as EE.

In the early morning hours of February 18, 2022, the FBI arrested the defendant at a residence in Lincoln.  While outside of the residence, authorities observed the defendant through a large window in a room in the front of the house and appeared to be sitting in front of a computer, later determined to be a Samsung Android.  As officers approached the residence, the defendant stood up and answered the door, provided his name and was arrested without incident. The investigation revealed that the defendant used that computer.  Later that day, the FBI lawfully seized three devices from that residence, including the Samsung Android computer that the defendant was observed to be sitting in front of when the FBI approached the home.  In April, 2022, a federal search warrant was obtained for those three electronic devices.  The FBI later conducted a forensic exam of the Samsung Android device and located 301 CSAM images and 2 CSAM videos.

On a later date, the CSAM images and videos recovered in this case were submitted to NCMEC and 77 series minor victims were identified.

## B.    History and Characteristics of the Defendant

This 24 year old defendant was raised in a very stable family, under stable socio-economic circumstances, had a generally very happy childhood, noted no problems in his family home, and had a good relationship with both his parents, until his most recent arrest.  PSR ¶ 54 and *see* defendant's letter to the Court at ECF No. 44-1.  He graduated from high school in 2017 and attended at least two colleges.  PSR ¶¶ 69-70.  Yet, he is a repeat offender of child pornography offenses.  In 2016, at the age of 17, he was charged as a juvenile in state court with

Distributing Material of a Child in a Sexual Act.  In January 2017, he received an approximately

7 month continuance without a finding ("CWOF") in that case and on August 16, 2017, only

days prior to his 18th birthday, that case was dismissed. PSR ¶ 47.  However, that did not deter

him.  Because, less than 3 ½ years later, he committed the federal child pornography offenses

that he now stands convicted of.  *See* PSR cover sheet.

Per an October 2022 evaluation conducted by a licensed social worker retained by the

defense, the defendant first began viewing pornography at age 10.  ECF No. 44-1 at p.5.

Initially, he viewed only adult legal pornography, but around the age of 13, he got a "pop up," on

his computer and that led him to an illegal site that included illegal images of child pornography.

*Id.*  "While on those sites, Mr. Toulotte exchanged files  with other people via the Internet… He

did acknowledge that some of the files he exchanged included pornography images of

prepubescent children.  Also, he did request images of young children from other people on these

sites…Mr. Toulotte  acknowledged that while he was communicating with people on the

Internet, he engaged in sexually explicit conversations that included graphic descriptions of child

sexual abuse.  [When asked] why he would return to this behavior given his previously

involvement with the court, [Toulotte] said he never took his previous interactions with the

police seriously and ultimately believed that he was unlikely to get caught."  *Id.* at pp. 5-6.  The

defendant knew exactly what he was doing when he committed the same type of crimes again

and he clearly knew right from wrong when he decided to exploit children.

Additional information relative to his upbringing, his personal life, as well as his mental

and emotional health, including treatment the defendant received while he was out on pretrial

release on the state case (that was later adopted federally), is outlined in more detail the PSR ¶¶

55-71.  The government was made aware of that information earlier by defense counsel and took

it into consideration when fashioning the sentence outlined in the plea agreement.

**C.     The Requested Sentence Is Needed to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, to Provide Just Punishment for the Offenses, Afford Specific and General Deterrence, and to Protect the Public from Future Crimes of the Defendant**

        Eight victims have submitted impact statements that were previously submitted to U.S.

Probation and to defense counsel.[4]  The seriousness of the crimes for which the defendant now

stands convicted cannot be underscored or minimized.  He distributed and possessed CSAM.  He

boasts about wanting to sexually abuse children himself.  He has negatively affected the lives of

minor children through his criminal acts.  In examining the seriousness of the offenses, the Court

must review the harm to the victims.  *See United States v. Cunningham*, 680 F.Supp 2d at 844,

855 (N.D. Ohio, 2010).  Each time a sexually explicit image or video of a child is viewed,

accessed, possessed, received, sent or produced, that minor child is being re-victimized.

        The continuing impact the defendant's crimes have had on his victims is reflected in the

multiple submitted victim impact statements.  The devastating toll this case has taken on these

minor victims is enormous and best summed up by the victim impact statements.[5]

        In her victim impact statement, minor victim Tara wrote, in part:
        "Every time someone views this trash, they are once again making me re-live the most
horrific part of my childhood.  I can never truly heal because the perpetrators and stalkers never
allow me to do so.  Anyone viewing those videos/pictures is just as guilty for causing me or any
other exploited child undue harm, unneeded stress and insecurity in a time when we need to feel

---

[4] The defendant's child pornography collection contained the following number of images for
each of the following identified minor series victims: 1 image of "Angela," 14 images of
"Aprilblonde,"1 image of "Jenny", 4 images of "Sweet White Sugar," 1 image of "Tara," 6
images of "Vicky," 1 image of "Cindy," and 2 images of "Jan_Feb."  Each of the eight victim's
has submitted a victim impact statement (and all but series victim "Jan_Feb") are requesting
restitution.  U.S. Probation has confirmed that the eight victim impact statements were submitted
to the Court with the final PSR.

[5] Series victim "Cindy" has requested that her impact statement be read aloud at the sentencing
hearing.

safe and have a chance to heal/recover.  As a young adult, I now realize the extent of people looking at these and I'm concerned about their locations fearing that they will find me.  These people need to be punished for taking away a major part of my childhood and sense of security..."

In her victim impact statement, minor victim Sweet White Sugar/Pia's mother wrote, in part:
"How has this crime impacted my child's general wellbeing?  A crime of this magnitude has had an enormous emotional effect on my child.  My child's life has been changed forever.  She is very aware of the images and videos that were produced and distributed online.  She is aware of the seriousness and vastness of this crime.  This crime creates a crippling insecurity in her and makes her worried and extremely upset.  The fear consumes her daily…She doesn't want to be defined as a victim but she cannot escape her victimization, and she can never put it in the past because it is ongoing….To the defendant:…Unfortunately, it's apparent that you and people like you selfishly pursue your own self-interest with no regard for the harm inflicted upon my child….No court order can restore what you have taken from her – and what she is exposed to by the continuing circulation of her images to others, with no regard for her, as a child, as a person…"

In her victim impact statement, minor victim Angela's mother wrote, in part:
"Aside from the horrible truth that my daughter was horrifically abused from the ages of four to seven and her innocence was literally stolen, one of the ongoing concerns that plagues my child is that literally lany person she meets on the street (or any teenage boy in her class) might have seen photos of her being cruelly debased and abused…The embarrassment and mental anguish of knowing that those debasing photos are still in circulation is ongoing.  I urge the courts to send a clear message that trading these images is not a 'victimless' crime…"

In her victim impact statement, minor victim "Jenny" writes, in part:
"…[I] worry about the pictures of me that are out there and I hate that others see them.  I have feared over the years that someone would recognize me in public.  I wish only that ever single one can be found and destroyed someday…"

In her victim impact statement, minor victim Jan_Feb's mother wrote, in part:
"…All those who trade these images and thereby created the demand for lurid and violent depictions of children are participants in the exploitation of my daughter.  Each traded picture that places a value on inventiveness, novelty, or cruelty played a role in egging on the abuse to even more vile acts…Regardless of whether they directly abused children themselves, reveled in the images of suffering, or persuaded others to abuse children on their behalf (to provide images of the abuse) each participant has a responsibility for the effects…"

In her (2013) victim impact statement, minor victim Vicky (Lily) wrote, in part:
"…I have recently gotten married and with this change to a new stage in my life I have found that I have a new set of emotional challenges.  I also have a step daughter who is just two years old.  I see myself in her in so many ways and this triggers many concerns II have about keeping her safe given the amount of people who are downloading images of me.

These, and all the other minor victims in this case, are not abstractions or objects—they are real people who experienced sexual exploitation for these pictures or images to be distributed and possessed.  A significant term of imprisonment reinforces, to the defendant and to others who are tempted to follow in his footsteps, that this crimes are exceedingly grave in nature, should act as a deterrent, and would promote respect for the law and to protect the safety of the public, and in particular, children, who are the most vulnerable victims in society.  Imposing serious penalties on those who distribute and possess child pornography serves the interests of all the minor victims in this case.  The government suggests the jointly recommended sentence will act as a deterrent to the defendant as well as a general deterrent to others who commit similar crimes.  This sentence is also "sufficient, but not greater than necessary," to account for this conduct and to accomplish the goals of § 3553(a).  *See* 18 U.S.C. § 3553(a).

III.    **CONCLUSION**

The defendant has victimized and exploited minor children.  The facts of this case are serious.  A sentence of 104 months followed by 5 years of supervised release is a significant sentence.  The government suggests that the jointly recommended sentence addresses the severity of the defendant's crimes, and is appropriate and reasonable.  As such, the government urges this Court to impose it.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:    */s/ Suzanne Sullivan Jacobus*
Suzanne Sullivan Jacobus
Assistant U.S. Attorney

Dated: March 6, 2023

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and thereby served an electronic copy on counsel for the defendant.

/s/ Suzanne Sullivan Jacobus
Suzanne Sullivan Jacobus
Assistant U.S. Attorney